UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| MICHAEL DEAN VAUGHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 10-54-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| RODNEY HAYES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Michael Vaughan has sued Defendant Colonel Rodney Hayes, alleging defamation, invasion of privacy, false light, and intentional infliction of emotional distress based on statements made during an investigation Hayes conducted. [Record No. 16, pp. 3-4] Vaughan requests both compensatory and punitive damages. The United States has filed a Motion to Substitute itself for Hayes under 28 U.S.C. § 2679, asserting that Hayes was acting within the scope of his employment during the incident giving rise to the current cause of action. [Record No. 18] For the reasons explained below, the Court will grant the United States' motion to substitute as a defendant for all counts.

**I.**

This action, as well as several others, arises out of one part of an investigation regarding Michael Vaughan conducted by the Kentucky National Guard.[1] At the time of the investigation

---

[1] The Court notes that this action is closely related to several other cases brought by Vaughan. *See* Civil Action Nos. 2: 12-53, 3: 10-05, 3: 10-54, 3: 12-33, 3: 12-34-DCR, 3: 12-35-DCR.

and meeting giving rise to this complaint, Hayes was the Chief Information Officer for the Kentucky National Guard. [Record No. 41, p. 5] He was also a "Federal Technician" and Colonel in the Kentucky National Guard, where he was the military staff officer in charge of communications and computers in a joint command involving both army and air force elements. [*Id.*] According to the United States, Hayes was "responsible for all aspects of the Kentucky National Guard computer systems." [*Id.*] His official federal title was "Supervisory IT Specialist." [Record No. 19-4, p. 1] Among his "duties and responsibilities" were to exercise "supervisory personnel management responsibilities," specifically requiring Hayes to initiate "action to correct performance or conduct problems of employees directly supervised and reviews and/or approves serious disciplinary actions (*e.g.*, suspensions, removals) involving non-supervisory subordinates." [*Id.*, p. 6]

At the time of the investigation, Vaughan was an employee of Research Analysis and Maintenance ("RAM"), which provided computer support services to the Kentucky National Guard. His duties included responsibility for the Kentucky National Guard's distance learning computer network server. [Record No. 43] Vaughan was supervised by Thomas Gavin, who reported to Major John Blackburn. Major Blackburn was also responsible for security. Major Blackburn was supervised by Hayes in his role as the Chief Information Officer/J6 for the Kentucky National Guard. [Record No. 41, p. 2]

Hayes became aware of a harassment complaint against Vaughan when Major Blackburn was contacted by Major Richmond of the 201st "Engineer Battalion." [Record No. 43, p. 3] Mary Kounovsky/Brigham ("Brigham") complained that Vaughan had threatened and harassed

-2-

her, and then carried out the threats by publishing certain sexually-explicit images of a sexual affair between Brigham and Vaughan. [*See id.*] Hayes reviewed a sequence of e-mails, texts, and communications, purportedly between Vaughan and Brigham. [*Id.*] Looking for corroboration, Hayes determined that the pictures — posted on websites like Facebook, MySpace, and dontdatethisgirl.com — were only originally in the possession of Brigham or Vaughan. [*Id.*] Hayes monitored Vaughan's government-issued computer, and determined that he had sufficient evidence that Vaughan had, at the very least, abused his privileges by sending threatening communications during times when Vaughan was on duty. [*Id.*] Although Hayes did not find direct evidence on Vaughan's government computer, Hayes determined that Vaughan had "used technology to harass and embarrass, he misused his privilege of limited use of phone and data for personal use." [*Id.,* pp. 3-4] Hayes then contacted Vaughan's contractor and informed him that Vaughan's services would no longer be required. [*Id.*, p. 4]

Hayes held a meeting regarding his investigation on August 18, 2009 — the day Vaughan was let go. Vaughan asserts that, at the meeting, Hayes stated that Vaughan had used four e-mail accounts to harass Brigham; that Vaughan had published pornographic photographs and video of Brigham in an attempt to embarrass, discredit, traumatize and exact revenge on Brigham; and that Hayes contacted Vaughan's wife about his actions and why he was terminated.[2] [Record No. 26, pp. 11-12] Vaughan asserts that "a number of individuals" were present at the meeting. [Record No. 16, p. 2] Statements made during this meeting form the basis of the current lawsuit.

---

[2]Although Vaughan makes an assertion about Hayes calling Vaughan's now ex-wife, there is no evidence regarding the phone call, nor is the alleged phone call mentioned in either the complaint or amended complaint. [*See* Record Nos. 3, 16] Instead, the complaint focuses on the meeting, and statements made during the course of the meeting.

## II.

The Attorney General, acting through the United States Attorney, has certified that Hayes was acting within the scope of his employment at the time of the incident out of which the claim arose, as provided in 28 U.S.C. § 2679. [Record No. 18, p. 1] The certification states that "[o]n the basis of the facts alleged in the Complaint and the Amended Complaint and the information available to me, Colonel Rodney Hayes was acting within the scope of his employment as the Chief Information Officer with the Kentucky National Guard in the actions alleged in the Complaint and Amended Complaint." [Record No. 18-1]

> Title 28 U.S.C. § 2679, commonly called the "Westfall Act," provides that:
>
> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). However, this certification is not conclusive, and is subject to judicial review. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37 (1995). Whether Hayes was acting within the scope of his employment is a question of law, determined in accordance with Kentucky law. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). The certification itself serves as *prima facie* evidence that Hayes' conduct was within the scope of his employment for the purposes of substituting the United States as a defendant. *Id.* Additionally, although Hayes may challenge the scope-of-employment certification, the burden is on Vaughan to come forward with specific facts rebutting the certification. *Larsen v. Frederiksen*, 277 F.3d 1040 (8th Cir. 2002). Vaughan may defeat the

certification and the subsequent motion to dismiss by providing the Court with evidence that raises a genuine issue of material fact regarding whether Hayes was acting within the scope of his employment.[3] *See Rutkofske v. Norman*, 114 F.3d 1188, 1994 WL 299382 (6th Cir. June 4, 1997).

In making scope-of-employment determinations under Kentucky law, courts consider whether the employee's conduct: (1) is of the kind which he was hired to perform; (2) occurred substantially within the authorized spacial and temporal limits of his employment; (3) was in furtherance of the employer's business; and (4) was "expectable" or foreseeable in view of the employee's duties. *See Flechsig v. United States*, 991 F.2d 300, 303 (6th Cir. 1991); *Frederick v. Collins*, 378 S.W.2d 617, 619 (Ky. Ct. App. 1964). Kentucky courts focus on the *intent* of the employee in making scope-of-employment determinations. For instance,

> an employee bus driver did not act within the scope of employment when he stopped the employer's bus in the middle of the street, left the bus, and assaulted another driver in a fit of road rage. In that case, the employee's motive was to settle a personal controversy; there being no issue of fact, the case stood dismissed for failure to state a cause of action. But an employee store clerk acted within the scope of his employment when he shot and killed a person in a grocery store during what he believed was a robbery. In that case, the employee's purpose was to protect the premises; scope of employment was not a jury question. And . . .an automobile dealership employee acted within the scope of his employment when he sought to repossess a vehicle by intercepting a person at a stoplight, demanding that he get out of the car, and shooting the tires out on the vehicle when the person refused to get out.

*Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 51 (Ky. 2008) (internal citations omitted). With this framework in mind, the Court turns to the issue of whether Vaughan has met his

---

[3] Although the Court had not yet ruled on the Motion to Substitute, the United States filed a Motion to Dismiss on March 25, 2012. [Record No. 19]

burden of coming forward with facts that rebut the Attorney General's certification that Hayes was acting within the scope of his employment during the investigation.

**A.**

Vaughan makes two major arguments in an attempt to show that Hayes acted outside the scope of his employment. His first argument is that he was not directly supervised by Hayes. [Record No. 26, p. 2] However, the United States responds that whether Vaughan was in Hayes' chain of command does not control whether Hayes was acting within the scope of his employment because it does not fit within the framework of analysis articulated by Kentucky courts. [Record No. 41, p. 2] In addition, the United States argues that Hayes did have supervisory authority over Vaughan's contract work, and had "the specific authority to exclude Vaughan from doing the work under the RAM contract for the Kentucky National Guard." [*Id.*]

Vaughan's first argument — that Hayes did not directly supervise him — is without merit. Implicit in Vaughan's argument is that if Hayes did not directly supervise Vaughan, he was acting outside the scope of his employment in investigating him. However, Hayes' listed job duties include requiring Hayes to initiate "action to correct performance" and to approve "serious disciplinary actions (*e.g.*, suspensions, removals) involving *non-supervisory subordinates*." [Record No. 19-4, p. 3 (emphasis added)] In addition, the complaint by Brigham moved up the appropriate chain of command from Major Richmond to Major Blackburn, then finally to Hayes in his supervisory role. That Hayes did not directly supervise Vaughan on a daily basis is of little consequence to the scope-of-employment issue.

Looking to the factors articulated in *Flechsig* and *Frederick*, Vaughan has put forth no facts that show that Hayes was acting outside the scope of his employment. *See* 991 F.2d at 303; *see also* 378 S.W.2d at 619. Hayes was investigating the use of government computers; specifically, whether Vaughan had used government computers to harass Brigham via electronic communications and whether Vaughan had used government computers to publish pornographic images of her. This investigation took place during business hours at Hayes' government place of employment; thus, it occurred substantially within the authorized spacial and temporal limits of his employment.[4] *See* 991 F.2d at 303. As the supervisory IT specialist, investigating whether government computers were being used for unauthorized purposes was certainly similar to the work which Hayes was hired to perform. *Id.* In addition, ensuring that a contract employee was not using government computers or government time to harass or embarrass a third party is in furtherance of the government's business.

Finally, Hayes' actions were a foreseeable exercise of his duties. His duties include responsibility "for all aspects of the Kentucky National Guard computer systems." [Record No. 41, p. 5] That Hayes would respond to a complaint which worked its way up the chain of command by investigating the complaint and — after investigating and drawing a conclusion — would act upon his findings is completely foreseeable given his job duties. Indeed, if Hayes had

---

[4] In the Withdrawal of Federal Recognition Hearing, Hayes testified that he investigated some of the internet links from his home computer. [*See* Record No. 43, p. 5.] However, the United States avers that the majority of the investigation took place at Hayes' office during work hours. [*See* Record No. 41, p. 3 ("Hayes' actions took place during business hours at his government place of work.").] Regardless, it is clear that the *meeting* giving rise to the cause of action occurred during Hayes' duty hours at his government place of work.

ignored Brigham's complaint and done nothing, he likely would have breached his duties as a supervisor required to review disciplinary decisions involving non-supervisory subordinates.

**B.**

Vaughan's second theory is that Hayes acted on his personal convictions regarding Vaughan's adulterous relationship. He argues that "Hayes's moral outrage and clearly articulated intent to correct some societal wrong purportedly committed by the Plaintiff in this action was such that he explicitly committed outrageous intentional tortious acts against the Plaintiff that were clearly outside the scope of his employment and not sufficiently associated with his employment duties so as to fall within the scope of the employment." [Record No. 26, p. 10] The United States responds that even if Hayes was motivated by moral outrage, he was still acting in furtherance of the business of the Kentucky National Guard and the United States. [Record No. 41, pp. 2-3]

Vaughan's assertion that Hayes was attempting to have him fired because of Hayes' moral outrage is mere conjecture. However, as the United States points out, even if Hayes spoke of his "personal moral outrage" regarding Vaughan's behavior, this does not show that Hayes' actions were outside the scope of his employment. [*See* Record No. 41, p. 7] The situation at hand is different from cases where the employee's motive or intent is in opposition to the employer's, such as the bus driver settling a personal vendetta by stopping his bus and assaulting a passing driver. *See Wood v. Se. Greyhound Lines*, 194 S.W.2d 81, 83 (Ky. 1946). Assuming Hayes was morally outraged by Vaughan's alleged harassment and publishing of pornographic material of a former mistress during work hours, this personal moral outrage is not inconsistent

with his governmental supervisory duties to ensure that employees act appropriately and productively while at work.

Vaughan's citations to "parallel" cases also miss the mark. Vaughan argues that Hayes' conduct "was clearly indistinguishable from the acts of the employees in Wood and Osborne." [Record No. 26, p. 11] However, both cases are factually inapposite. As stated above, *Wood* involved a plaintiff attempting to hold an employer liable for a bus driver who stopped his bus in the middle of the street and assaulted a man driving by because of a prior incident between the two men. *See Wood,* 194 S.W.2d at 83. And *Osborne* involved a plaintiff attempting to hold an employer liable for "outrageous" conduct of an employee — namely, a sexual relationship initiated by a priest acting as a marriage counselor with one of his parishioners. *See Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000). Hayes' conduct is in no way "indistinguishable" from a bus driver assault and a priest initiating an affair with a parishioner during the course of marriage counseling.

Because Vaughan has pled conduct within Hayes' scope of employment and Vaughan alleges only that Hayes acted from personal moral conviction, summary dismissal of the scope of employment challenge is warranted. *See RMI Titanium Co*, 78 F.3d at 1144 ("Where, as here, a plaintiff in his complaint pleads conduct within an individual's scope of employment and merely alleges bad or personal motive, summary dismissal of the scope challenge is warranted.").

**C.**

Finally, Vaughan request that the Court to hold an evidentiary hearing to determine whether Hayes' conduct was outside the scope of his employment will be denied. [*See* Record No. 26, p. 12.] First, the stated purpose behind Vaughan's request — to discover Hayes' sworn testimony during a hearing held July 9, 2011 — is now moot. [*Id.*] The United States has provided a transcript from that hearing as an Exhibit, which has since been sealed. [*See* Record No. 43.] In addition "[n]o hearing on certification is necessary where even if the plaintiff's assertions were true, the complaint allegations establish that the employee was acting within the scope of his/her employment." *RMI Titanium Co.*, 78 F.3d at 1143. Because the allegations in Vaughan's complaint establish that Hayes was acting within the scope of his employment, the Court finds that a hearing on certification is not necessary.

**III.**

The Attorney General, acting through the United States Attorney pursuant to 28 C.F.R. § 15.3(a) and the appendix, has properly certified that Hayes was acting within the scope of his employment at the time of the incident of which the claim arose. Vaughan has failed to meet his burden to present facts which rebut this certification. Thus, the action "shall be deemed an action against the United States . . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679. Accordingly, it is hereby

**ORDERED** as follows:

1) The United States' Motion to Substitute [Record No. 18] is **GRANTED**.

2) This action shall be deemed an action against the United States. The United States is hereby **SUBSTITUTED** for Defendant Colonel Rodney Hayes.

This 18th day of October, 2012.

Signed By:
*Danny C. Reeves* DCR
United States District Judge